UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JULIE DUBBS,                        )
                                    )
          Plaintiff,                )
                                    )   Case No. 1:16-CV-498
v.                                  )
                                    )   Judge Curtis L. Collier
GCA SERVICES GROUP OF NORTH         )
CAROLINA, INC.,                     )
                                    )
          Defendant.                )

## M E M O R A N D U M

Before the Court is the motion for summary judgment of Defendant, GCA Services Group

of North Carolina, Inc., on the claims of Plaintiff, Julie Dubbs, for discrimination and retaliation

under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* (the "ADEA")

and the Tennessee Human Rights Act, Tenn. Code Ann. §§ 4-21-201, *et seq.* (the "THRA"), and

for negligent hiring, retention, and supervision. (Doc. 44.) Plaintiff responded in opposition

(Docs. 48–49), and Defendant replied (Doc. 50).

Also before the Court are Defendant's motion to strike part of Plaintiff's response to the

motion for summary judgment (Doc. 51), to which Plaintiff responded in opposition (Doc. 52);

Plaintiff's request to file her response to the motion for summary judgment late (Doc. 52); and

Plaintiff's request to strike Defendant's motion for summary judgment (Doc. 48 at 4–5).[1]

The Court will **GRANT IN PART and DENY IN PART** Defendant's motion for

summary judgment (Doc. 43). The Court will **DENY** Defendant's motion to strike (Doc. 51) and

---

[1] The Court construes Plaintiff's two requests as motions because they were made in writing, they state her grounds for seeking relief, and they state the relief sought. *See* Fed. R. Civ. P. 7(b)(1)(A–C). The Court prefers that requests for orders be made as motions, not within other filings. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

Plaintiff's motion to strike (Doc. 48 at 4–5).  The Court will **GRANT** Plaintiff's motion to late file her response (Doc. 52).

## I.    BACKGROUND[2]

Defendant provides janitorial, custodial, and other facility services to its customers. Plaintiff, who was fifty-three years old at the times relevant to this dispute, worked for Defendant as an account manager for Defendant's customer Calsonic.  In this position, Plaintiff supervised a team of janitors who worked at Calsonic's locations in Lewisburg, Tennessee and Shelbyville, Tennessee.  Shortly before the events giving rise to this matter, Jeffrey Nicholson, an area manager for Defendant, became Plaintiff's immediate supervisor.

On March 26 or 27, 2015, Nicholson asked Plaintiff her age.   On the same day, Nicholson asked Plaintiff the age of an employee she supervised and whether that employee was ready to be mentored.  Most likely on the same day, Nicholson said some employees were too old.

On March 28, 2015, Plaintiff wrote a letter to the Tennessee Human Rights Commission. (Doc. 43-1.)  The letter recited Nicholson's comments about age, as well as other things Plaintiff had found concerning about her interaction with him, and asked for advice.  Around the same time, Plaintiff sent an email to Nicholson to request some time off.  She inadvertently attached the letter to the Tennessee Human Rights Commission to the email to Nicholson.  Defendant alleges Nicholson did not open the attachment, but merely forwarded the entire email to Human Resources to address Plaintiff's request for time off.  Plaintiff alleges Nicholson did open the attachment,

---

[2] Unless otherwise noted, where the facts set out by the parties are disputed, the Court has viewed the evidence in the light most favorable to Plaintiff and drawn all reasonable inferences in her favor.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

because she says Nicholson's supervisor, Regional Manager Ron Firestine, testified during his deposition that Nicholson discussed the allegations in the letter with him at some point.

Nicholson also made other age-related comments. Sometime between April and June, he said older people become complacent and lazy and cannot move as fast, and for this reason their sites become a mess. This comment was made during an after-hours phone call between Nicholson and Plaintiff. In May 2015, he said Plaintiff's employees should ideally be between twenty-five and thirty-five years old, later saying they should be between twenty-five and fifty-two years old. Also in May 2015, he said one of Plaintiff's sites only needed two young girls to run it.

In May 2015, Nicholson changed Plaintiff's employment duties, requiring her to report to both the Shelbyville and the Lewisburg Calsonic sites each day. This added sixty miles of travel for Plaintiff each day. Nicholson engaged in long phone calls with Plaintiff during which he criticized and demeaned Plaintiff's abilities as a manager. Some of these phone calls took place after work hours. Nicholson also removed some of Plaintiff's duties as an account manager and instructed her to give vacation time to some of her employees, resulting in Plaintiff's having to work sixteen hours on some days.

On June 23, 2015, a Calsonic employee called Plaintiff to report that Edward Gilliam, one of the janitorial employees Plaintiff supervised, had been taken to the hospital by ambulance.[3] While waiting to clock in for his shift, Gilliam had admitted to an inquiring Calsonic employee that he was having shoulder pain. Plaintiff texted Defendant's Human Resources Manager

---

[3] The employee's name is alternately spelled "Gilliam" and "Gillian" in the documents before the Court. The Court has selected the former because it appears to be the name the individual used during his deposition.

Michael Emery, who texted Plaintiff to contact Gilliam's family. Plaintiff called Gilliam, whom the hospital had diagnosed with a pulled muscle. Plaintiff drove Gilliam back to the Calsonic facility and told him to take the rest of the day off. Gilliam returned to work the next day.

Defendant had a policy requiring employees to report any accidents or injuries suffered by the employees they supervise. Plaintiff was aware that failure to make a report was considered a major violation and could result in immediate discharge. (Doc. 43-1 at 21 [Dubbs Dep. at 97] (citing Doc. 43-1 at 35–36 [Ex. 4 to Dubbs Dep., excerpt of Def. policy]).) Plaintiff did not file a report about the June 23 incident with Gilliam, however. Plaintiff disputes that Gilliam was, in fact, injured on the job on June 23, principally because he had not yet clocked in when he was taken to the hospital. (*See id.*; *see also* Doc. 48 at 2–3, Doc. 49 at 5.)

At some time later, Defendant's management became aware of the incident with Gilliam. According to Defendant, Gilliam called Plaintiff's supervisor, Nicholson, on July 28, 2015, to ask if Defendant would pay any of his hospital bills from the incident. Nicholson did not know about the incident, so Nicholson brought his own supervisor, Regional Manager Firestine, into a three-way call. Firestine then investigated and found Plaintiff had not filed an incident report. According to Plaintiff, however, the discovery could not have happened this way, because Gilliam testified in his deposition that he never talked to Nicholson or Firestine about the incident and he never sought worker's compensation benefits for it.

Defendant terminated Plaintiff on July 31, 2015, citing her failure to report an injury at a facility she supervised. (Doc. 43-1.) On December 14, 2015, Defendant hired Chad Mitchell, who was younger than forty years old, to fill Plaintiff's former position.

Plaintiff filed suit on December 16, 2016. (Doc. 1.) She asserted causes of action under the ADEA and the THRA for discrimination and retaliation, as well as a cause of action for negligent hiring, retention, and supervision. Defendant answered on March 6, 2017 asserting, among other defenses, the statutes of limitations. (Doc. 4 ¶ 73.)

Defendant filed its motion for summary judgment on March 1, 2018. (Doc. 43.) On March 22, 2018, Plaintiff filed an eight-page document entitled "Response in Opposition to Motion for Summary Judgment." (Doc. 48.) The document contained three sections: a "Statement of Disputed Facts"; a request that the Court strike Defendant's motion for summary judgment because of discovery violations; and a list of the exhibits Plaintiff was attaching in support of her response. The list included a "Memorandum in Opposition to Motion for Summary Judgment (filed separately)." (*Id.* at 8.) The next day, Plaintiff filed a twenty-page document entitled "Memorandum in Opposition to Motion for Summary Judgment." (Doc. 49.) Defendant replied on March 28, 2018. (Doc. 50.) On the same day, Defendant filed a motion to strike Document 49 or, in the alternative, to strike certain portions of it, based on the impermissibility of filing two responsive briefs, its lateness, its length, and its lack of support for factual assertions. (Doc. 51.) Plaintiff responded in opposition on April 4, 2018, including a motion for retroactive leave to file her response one day late. (Doc. 52.)

II.    **STANDARD OF REVIEW**

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact

exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). A factual dispute is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court should view the evidence, including all reasonable inferences, in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-cv-63, 2009 WL 3762961, at *2–3 (E.D. Tenn. Nov. 4, 2009) (explaining the court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). Each party must properly support its assertions of fact and its responses to another party's assertions of fact. Fed. R. Civ. P. 56(e).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should grant

summary judgment. *Id.* at 251–52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III. **DISCUSSION**

Defendant moves for summary judgment on Plaintiff's hostile work environment claims under the ADEA and the THRA, her unlawful termination claims under the ADEA and the THRA, her retaliation claims under the ADEA and the THRA, and her claim for negligent hiring, retention, and supervision. (Doc. 44.) The parties agree each of Plaintiff's claims under the THRA should be assessed under the same framework as her corresponding claims under the ADEA. (Doc. 44 [Def.'s Mem.] at 6 n.7 (citing *Scola v. Publix Super Markets, Inc.*, 902 F. Supp. 2d 1083, 1091 (E.D. Tenn. 2012) ("The analysis for Plaintiff's state-law THRA claim is identical to the analysis for an age discrimination claim brought under the federal ADEA, 29 U.S.C. §§ 623 *et seq.*"); Doc. 49 [Pl.'s Mem.] at 12 (citing same).) The Court accordingly considers those claims together below.

First, however, the Court must address the parties' respective motions to strike each other's summary-judgment filings and Plaintiff's retroactive motion for leave to file her response to the motion for summary judgment one day late.

### A. **Preliminary Motions**

Defendant moves to strike what it describes as Plaintiff's "Second Response" to the motion for summary judgment. (Doc. 51 at 1.) Plaintiff moves to strike Defendant's entire motion for summary judgment. (Doc. 48 at 4–5.) Plaintiff also moves retroactively for leave to file her response to the motion for summary judgment one day late. (Doc. 52 at 1.) The Court will begin with Defendant's motion to strike, which necessarily involves Plaintiff's motion to extend.

**1. Defendant's Motion to Strike and Plaintiff's Motion to Extend**

Defendant first argues the Court's local rules allow a party to file one, and only one, "answering brief" to a motion. E.D. Tenn. L.R. 7.1(a). Defendant argues Plaintiff has filed two briefs with overlapping subject matter. Because Plaintiff has filed two briefs, Defendant urges, the second one should be stricken and Defendant should not be required to respond to it. But Plaintiff has not filed two briefs. She has filed two different types of documents: first, a statement of disputed facts (Doc. 48), which includes both a list of supporting exhibits and a request (addressed below) to strike Defendant's motion for summary judgment; and, second, a brief opposing Defendant's motion for summary judgment (Doc. 49). Unlike some state courts, this Court does not require a separately filed statement of facts. The Court does, however, recognize one when it sees it. Because Plaintiff did not file two briefs, Defendant did not have to suffer any prejudice from replying to two briefs. This circumstance also accounts for the overlapping subject matter Defendant notes in the two documents.

Defendant also moves to strike Plaintiff's brief because it was one day late. A brief and any supporting materials in response to a dispositive motion must be filed within twenty-one days of the opening brief. E.D. Tenn. L.R. 7.1(a). Plaintiff's statement of facts and her exhibits were filed on time, but her brief was filed one day late. In her response to the motion to strike, Plaintiff retroactively moves the Court to allow her to file her brief one day late. (Doc. 52.) Plaintiff's counsel explains certain difficulties she had in completing and filing the response late on the last day for filing, chiefly the loss of parts of the brief either by inadvertently pasting over it or by failing to save changes. (*Id.* at 2.) Counsel had to recreate and complete those portions, including by locating correct record citations. Counsel represents that she worked through the night and

filed the brief before 8:00 a.m. the next day. For good cause shown, the Court will **GRANT** Plaintiff's motion to file her response one day late (Doc. 52). The lateness of Plaintiff's brief therefore does not provide grounds for striking it.

Defendant next argues Plaintiff's response is too long and the Court should strike the part that exceeds the page limit. (Doc. 51 at 2–3.) Briefs "shall not exceed 25 pages in length unless otherwise ordered by the Court." E.D. Tenn. L.R. 7.1(b). The two documents together are twenty-seven pages long, according to Defendant's count, and the last page and half of Plaintiff's brief is single spaced rather than double spaced. In response, Plaintiff asks the Court to consider only pages two through nineteen of her brief. (Doc. 52 at 4.) Omitting Plaintiff's motion to strike and her list of attachments, however, and adding a page and a half for Plaintiff's single spacing, the Court concludes Plaintiff's collective response is within the page limit.

Finally, Defendant argues that many of Plaintiff's assertions in both documents have no citations to the record. Defendant asks the Court to strike these assertions. It is not necessary that such assertions be stricken. As explained above in the standard of review for a motion for summary judgment, a non-movant may not rest on mere allegations, but must properly support its own assertions of fact and address the moving party's assertions of fact. *See Chao*, 285 F.3d at 424; Fed. R. Civ. P. 56(d). Where factual assertions are unsupported by citations to the record, the Court does not give them weight.

Because Plaintiff has not filed two briefs or exceeded the page limit, because the Court is excusing Plaintiff's late filing of her brief, and because striking portions of a brief for lack of record citations is unnecessary, the Court will **DENY** Defendant's motion to strike (Doc. 51).

### 2.     Plaintiff's Motion to Strike

Plaintiff moves to strike Defendant's motion for summary judgment for violating Rule 33 of the Federal Rules of Civil Procedure.  (Doc. 48 at 4–5.)  Rule 33 requires interrogatories to be answered under oath.  Fed. R. Civ. P.  33(b)(3).  Plaintiff argues Defendant violated this rule because the person who verified Defendant's answers to Plaintiff's interrogatories, Human Resources Director Emery, later testified in his deposition that he had not read them.  Plaintiff has cited no authority for striking a motion for summary judgment where the person who verified the movant's interrogatory answers says he has not read them.  Plaintiff has also not articulated in what way she has been harmed by this alleged violation; Defendant has not, for example, disavowed any of the answers on the grounds that the verification was not binding.  Nor has Plaintiff explained why striking Defendant's entire motion for summary judgment would be an appropriate remedy for her alleged harm or an appropriate sanction for Defendant's alleged violation.  Plaintiff's motion to strike (Doc. 48) will be **DENIED**.

### 3.     Communication Between Counsel

Several of the foregoing issues could have been resolved by communication between counsel.  They are thus atypical for a case in which both parties are represented.  The Court expects the parties to communicate through counsel to resolve such issues in future.

### B.     Hostile Work Environment

To establish a hostile work environment based on age, a plaintiff must show: (1) she was at least forty years old; (2) she was subjected to harassment, through words or actions, based on age; (3) the harassment unreasonably interfered with her work performance and created "an objectively intimidating, hostile, or offensive work environment"; and (4) there is a basis for

employer liability.[4] *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 834–35 (6th Cir. 1996). The elements and burden of proof for a hostile work environment claim are the same in an age-discrimination case as in other discrimination contexts. *Id.* at 834. It is therefore appropriate to look to analyses of the law in other discrimination contexts to understand the legal components of an age-discrimination case.

To satisfy the third element, harassment "must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* at 835 (quoting *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986)). Factors include "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). The workplace environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998) (citing *Harris*, 510 U.S. at 21-22).

Defendant argues Plaintiff cannot satisfy the third element because the alleged harassing comments were not sufficiently severe or pervasive to alter the terms of her employment. Plaintiff alleged personal knowledge of the following age-based comments by Nicholson over a three- to four-month period: he asked Plaintiff her age and the age of an employee she supervised; he said some employees were too old; he said older people became complacent, lazy, and slow, and their sites are a mess; he said Plaintiff's employees should be between twenty-five and thirty-five years

---

[4] The parties have both submitted a formulation consisting of five elements, rather than four. The substance, however, is the same.

old, or between twenty-five and fifty-two years old; and he said one of Plaintiff's sites only needed two young girls to run it. Defendant argues these comments were neither severe nor threatening, but are rather "the isolated, non-severe (even if offensive in nature) conduct which courts in this jurisdiction have refused to consider actionable harassment." (Doc. 44 at 8 (citing *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008) and *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512–13 (6th Cir. 2011).)

Plaintiff does not point the Court to any age-related comments other than those summarized by Defendant. She also concedes these comments "may not be sufficiently severe or pervasive to alter the condition of the working place or to create an abusive working environment." (Doc. 49 at 13; *see also id.* at 8.) She argues, however, that other actions of Nicholson's, combined with his age-related comments, created an actionable hostile work environment. (*Id.* at 8, 13–14 (citing Doc. 48-2 [Dubbs Aff.] ¶¶ 7–9, 12, 13).) Nicholson's other actions consisted of long phone calls during which he criticized and demeaned her abilities as a manager, including after work hours (Doc. 48-2 [Dubbs Aff.] ¶¶ 7–9)[5]; removing some of her account manager duties (*id.* ¶ 12); instructing her to give vacation to some of her employees, resulting in her having to work sixteen hours on some days (*id.* ¶ 13); and requiring her to drive sixty more miles per day in order to report to two work sites (*id.*).[6]

---

[5] One of the phone calls to which Plaintiff refers contained Nicholson's alleged comments about preferring younger workers and that older workers were complacent, lazy, and slow. (Doc. 48-2 [Dubbs Aff.] ¶ 9 (citing Doc. 48-2 [phone records] at 15) (showing sixty-seven-minute call with Nicholson's phone number on May 8, 2015).)

[6] Plaintiff also alleges she was left out of staff meetings. (Doc. 49 at 8.) The evidence to which she cites does not include this allegation.

As Defendant argues and Plaintiff essentially agrees, Nicholson's comments were objectively neither frequent, severe, threatening, nor humiliating enough to permeate Plaintiff's work environment with discriminatory intimidation, ridicule, or insult, and they did not unreasonably interfere with Plaintiff's work performance.

Nor can the Court find a hostile work environment by factoring in the other conduct Plaintiff alleges. Plaintiff cites no authority to support her position that long phone calls or changes in work duties can be added to discriminatory comments to show a hostile work environment. It would defeat the purpose of the test to require a plaintiff on the one hand to show age-based harassment so bad that it alters the conditions of her work environment, but on the other to allow her to do so by supplementing non-actionable age-related comments with actual changes to her work environment that are facially neutral as to age. The second and third elements of a hostile work environment require otherwise: a plaintiff must be subjected to harassment, through words or actions, "based on age," and *that harassment* must interfere with the plaintiff's work performance or create an objectively hostile environment. *See Crawford*, 96 F.3d at 834–35.

Put another way, Plaintiff's argument is circular. The Court could only conclude Nicholson's other, facially neutral conduct contributed to a hostile work environment based on age if there were evidence that the "other conduct" was motivated by age-based animus. The only evidence Plaintiff has offered of age-based animus is Nicholson's comments, the ones to which Plaintiff wishes to add the "other conduct" to show the existence of a hostile work environment.

For the foregoing reasons, the Court will **GRANT** Defendant's motion for summary judgment on Plaintiff's hostile work environment claims under the ADEA and the THRA. Plaintiff's claims for a hostile work environment will be **DISMISSED**.

## C.    Unlawful Termination

Defendant argues Plaintiff cannot prove age discrimination in her termination, whether through direct or circumstantial evidence.

Before turning to the two categories of evidence through which Plaintiff seeks to establish her discrimination claims, the Court pauses to identify the specific discrimination causes of action Plaintiff is asserting.  Count One of Plaintiff's Complaint alleges age discrimination in violation of the ADEA.  (Doc. 1 at 8–9.)  Count Two alleges age discrimination in violation of the THRA. (*Id.* at 9–10.)  Neither count identifies a particular adverse employment action, but both incorporate the preceding allegations by reference.  Defendant's motion for summary judgment assumes these two counts seek redress only for a hostile work environment and unlawful termination.  Plaintiff does not contest this formulation of her claim.  Because the complaint does not clearly allege a discrimination claim based on an adverse employment action other than termination (such as the "other actions" discussed at the end of the Court's analysis of Plaintiff's hostile work environment claims), and because Plaintiff does not argue in her response that she has asserted discrimination claims other than for a hostile work environment and unlawful termination, the Court accepts Defendant's formulation of Plaintiff's claims and concludes Plaintiff's discrimination claims consist only of hostile work environment claims and unlawful termination claims.

### 1.    Direct Evidence of Unlawful Termination

To prove an ADEA claim based on direct evidence, a plaintiff must "prove[] 'by a preponderance of the evidence . . . that age was the "but-for" cause of the challenged employer decision.'"  *Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009)).  Direct evidence of age discrimination is "that evidence

which, if believed, ***requires*** the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Geiger*, 579 F.3d at 620 (6th Cir. 2009) (emphasis added) (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*)). For example, a decision maker's statements that the ability to perform the plaintiff's job duties diminish with age, some of which were directed to the plaintiff at the same time he was demoted, constituted direct evidence of age discrimination. *Wexler*, 317 F.3d at 572.

A discriminatory statement must come from a decision maker in order to provide direct evidence of discrimination. *Geiger*, 579 F.3d at 620–21 (citing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 550 (6th Cir. 2004). Thus, a statement by someone who is not a decision maker, or a statement by a decision maker that is not related to the decision-making process, does not demonstrate sufficient age-based animus. *Id.* (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369 (6th Cir. 1998)). In *Geiger*, the Court of Appeals held that age-based slurs by the plaintiff's direct supervisor were not direct evidence of discrimination, both because the slurs were unrelated to the discharge decision and because the supervisor did not make the discharge decision. *Geiger*, 579 F.3d at 620–21.

Defendant argues Nicholson's age-based comments are not direct evidence of discrimination because Nicholson did not play a role in Defendant's decision to terminate Plaintiff. (Doc. 44 at 12.) Defendant relies on testimony by Regional Manager Firestine that he and Human Resources Director Emery investigated the situation and made the decision to terminate Plaintiff. (Doc. 43-2 at 5–6 [Firestine Dep. at 47–48].) Firestine testified that Nicholson had no role in the decision, other than connecting Gilliam to Firestine after Gilliam allegedly called Nicholson about his hospital bills. (*Id.* at 12.) Emery similarly testified that it was he and Firestine who made the

termination decision. (Doc. 43-5 at 2–3 [Emery Dep. at 127–28].) Nicholson also testified he had no input into the decision to terminate Plaintiff. (Doc. 43-4 at 7 [Nicholson Dep. at 130].) Finally, Defendant argues only one of Nicholson's comments was about the age of Plaintiff herself, and none of them related to the decision-making process for her termination.

Plaintiff argues she has offered direct evidence of discrimination, in that she disputes Defendant's assertion that Nicholson had no role in the decision to terminate her. She points to Firestine's deposition testimony that any suspension or demotion of Plaintiff would have involved Nicholson:

> Q.     Did you ever want to suspend Ms. Dubbs for any reason prior to that omission of the report in June of 2015?
>
> A.     If I did, I don't remember. I mean, I might have and there may have—
>
> Q.     But can you recall any reason why you would have wanted to suspend her or demote her?
>
> A.     Not directly, ma'am.
>
> * * *
>
> Q.     Did Jeffery [Nicholson] want to suspend or demote her?
>
> A.     Not that I know of. I mean, like I said, I don't recall us doing it, because he would have—we would—that would have been kind of a joint effort. I mean, that would have went up to HR, as well.

(Doc. 50-4 at 8 [Firestine Dep. at 90].)[7]

Firestine's testimony that Nicholson would have been involved in a decision to suspend or demote Plaintiff does not create an issue of material fact as to whether Nicholson was involved in

---

[7] Plaintiff cites Firestine's deposition at 4014-17. (Doc. 49 at 17.) The Court is unable to locate this reference in the exhibits to Plaintiff's response. Defendant submits that the correct citation would be to Firestine's deposition at 90:14–18. (Doc. 50 at 12 n.9.)

the decision to terminate Plaintiff. That a different process would have been followed if circumstances had been different has no bearing on the process Defendant actually followed in deciding to terminate Plaintiff. Plaintiff has presented no evidence that Nicholson was involved in the decision to terminate her or that his age-related comments were related to the decision-making process. Her unsupported assertion to the contrary is not sufficient to entitle her to a trial on the issue. *See Chao*, 285 F.3d at 424; *Smith*, 2009 WL 3762961, at *2–3. Lacking any evidence that Nicholson was a decision maker as to Plaintiff's termination, the Court concludes Plaintiff has not presented direct evidence of age discrimination.[8]

### 2. Circumstantial Evidence of Unlawful Termination

Where direct evidence is not available, a circumstantial discrimination claim is evaluated using the familiar burden-shifting approach established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined by *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the *McDonnell Douglas* framework, the plaintiff carries the initial burden of establishing a prima facie case of discrimination. *Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir. 2002). Once the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate, non-discriminatory explanation for its actions. *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 463 (6th Cir. 2003) (citing *Burdine*, 450 U.S. at 253).

---

[8] Even if Nicholson had been a decision maker as to Plaintiff's termination, the evidence Plaintiff has presented is not direct evidence her termination was based on her age. If Nicholson were a decision maker, his comments would allow a fact finder to conclude age bias played a role in Defendant's termination, but they would not require that conclusion. As such, they do not constitute direct evidence of age discrimination.

If the employer articulates an appropriate explanation, the burden shifts back to the plaintiff to demonstrate the employer's explanation is a pretext for discrimination. *McDonnell Douglas*, 411 U.S. at 802–04, 807. Pretext can be proven by showing the reason the employer gave for its actions "had no basis in fact, did not actually motivate the defendant's challenged conduct, or was insufficient to motivate the defendant's challenged conduct." *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 725 (6th Cir. 2012) (quoting *Schoonmaker v. Spartan Graphics Leasin, LLC¸* 595 F.3d 261, 268 (6th Cir. 2010). A defendant bears only the burden of production and not the burden of persuasion. *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003).

Throughout this burden shifting, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (quoting *Burdine*, 450 U.S. at 253*); see also DiCarlo v. Potter*, 358 F.3d 408, 414–415 (6th Cir. 2004). The plaintiff cannot rely purely on "mere personal belief, conjecture and speculation" because they are insufficient to support an inference of discrimination. *Woythal v. Tex-Tenn Corp.*, 112 F.3d 243, 247 (6th Cir. 1997) (internal alteration omitted).

A prima facie case of age discrimination based on circumstantial evidence requires the following: (1) plaintiff was at least forty years old at the time of the alleged discrimination; (2) she was subjected to an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone substantially younger or was treated less favorably than a similarly situated, non-protected person. *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312–13 (1996); *Harris v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 594 F.3d 476, 485 (2010); *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–83 (1992).

Defendant disputes only the fourth element of Plaintiff's prima facie case.  It also argues it had a legitimate, nondiscriminatory reason to terminate Plaintiff and Plaintiff cannot show that reason was a pretext for discrimination.

### a.    Replacement by a Substantially Younger Person

Defendant disputes the fourth element of Plaintiff's prima facie case of age discrimination—that she was replaced by a substantially younger person, or that she was treated less favorably than a similarly situated, non-protected employee—on two grounds.

First, Defendant argues "Plaintiff's duties were spread among existing employees, all of whom were in Plaintiff's protected class and two of whom were older than Plaintiff."  (Doc. 44 at 14 (citing Doc. 43-2 at 7–9 [Firestine Dep. at 72–74], Doc. 43-4 at 5–6 [Nicholson Dep. at 54–55]).)  Defendant alleges it gave Plaintiff's duties to Area Manager Martha Espinoza for the first month and a half.  After Espinoza did not perform well, Defendant gave those duties to Gary Conaway and Walter Wilson, and Nicholson served as a "back stop."[9]  This, Defendant argues, precludes a finding that Plaintiff was replaced by someone outside of her protected class.

In response, Plaintiff submits the affidavit of Conaway stating he was not trained or asked to take over Plaintiff's duties after she left, and he in fact did not take over any of her duties after she left.  (Doc. 48-8 ¶¶ 2–3.)  Instead, he testifies that he, as the assistant manager of the Lewisburg site, and Walter Wilson, as the site manager at Shelbyville, continued their regular duties as they

---

[9] Defendant alleges the ages of Espinoza (46), Conaway (61), and Wilson (57), but the evidence to which it cites does not include the ages of these individuals.  There is therefore no proof regarding whether they are in Plaintiff's protected class.  The age of the employees among whom a terminated employee's duties are shared is not, however, relevant to the present analysis.

had when Plaintiff was still the account manager, basically operating without supervision until Mitchell was hired. (*Id.*)

Plaintiff has shown the existence of genuine issues of fact as to whether other employees took over her job duties after she was terminated. Taking all facts and reasonable inferences in Plaintiff's favor, Conaway's affidavit puts in issue whether Espinoza took over Plaintiff's job duties for a month and a half: Conaway claims to have been "basically unsupervised" until Mitchell's hiring. (Doc. 48-8 ¶ 3.) It also puts in issue whether Conaway himself took over any of Plaintiff's job duties at Lewisburg. (*Id.* ¶¶ 2–3.) Finally, it puts in issue whether Wilson took over any of Plaintiff's job duties at Shelbyville.[10] (*Id.*) Defendant is therefore not entitled to summary judgment on its argument that Plaintiff's duties were spread among other employees after her termination.

Defendant's second attack on the "replacement" element of Plaintiff's prima facie case has to do with the length of time that passed before a younger person was hired. Defendant acknowledges it eventually did hire Chad Mitchell, who was younger than forty, to fill Plaintiff's former position. But this was not until December 14, 2015, four and a half months after Plaintiff was terminated. Defendant argues this lapse in time means the younger employee was not, in fact, a replacement of Plaintiff. (Doc. 44 at 14 (citing cases).)

Plaintiff responds as follows: Defendant had an attorney representing it regarding Plaintiff's complaint before the Equal Employment Opportunity Commission; Defendant's

---

[10] The basis for Conaway's knowledge about Wilson's job duties is unclear. Defendant does not contest the source of Conaway's knowledge, however, and the Court at this stage must take all reasonable inferences in Plaintiff's favor.

attorney might have advised Defendant to wait to replace Plaintiff in a deliberate move to defeat Plaintiff's discrimination claim; there is therefore a genuine issue of material fact as to Defendant's intent to discriminate against her. Plaintiff cites no authority for this argument. She offers no evidence this actually took place. She also does not address the policy implications of speculating about the advice attorneys may be giving their clients and whether that advice is an improper attempt to circumvent the law. If Plaintiff's position were correct, a plaintiff could always claim the defendant had been advised by an attorney to wait just a little longer than whatever time period had been found acceptable in other cases. The Court declines to adopt Plaintiff's argument.

As the movant, however, Defendant bears the burden to show there is no dispute of material fact and it is entitled to judgment as a matter of law. It has not done so on this argument. The cases Defendant cites do not set out a bright-line rule that the lapse of a certain amount of time between a termination and a hiring prevents a finding of replacement for purposes of the fourth element as a matter of law. In one case, the Court of Appeals considered a seven-and-a-half-month lapse, but in the context of a legitimate reduction in force in which there was no dispute that the plaintiff's duties had been shared among existing employees during the intervening months. *Sisk v. Comm. Furniture Group, Inc.*, 174 F. App'x 283, 287 (6th Cir. 2006). In another, the Court of Appeals considered a nine-month lapse, but the plaintiff's termination had followed a market downturn and the cancellation of several large orders in the plaintiff's area, and the new employee was hired nine months later after business picked back up. *Lilley*, 958 F.2d at 752. In addition, there was no dispute that the plaintiff's reduced duties were spread among other employees in the meantime. *Id.* In yet another, a district court found an alleged replacement did not in fact replace the plaintiff because the two had different titles and duties; the court mentioned a five-month lapse

only as an additional factor supporting its conclusion. *Speck v. Agrex, Inc.*, 888 F. Supp. 2d 867, 879 (N.D. Ohio 2012).

In sum, while a significant lapse of time may "substantially weaken" a plaintiff's claim that she was replaced by a younger person, *see Simpson v. Midland-Ross Corp.*, 823 F.2d 937, 941 (6th Cir. 1987), it does not on its own defeat such a claim as a matter of law. Given the genuine dispute of material fact as to whether Plaintiff's duties were spread among other employees after her termination, and given that a lapse of four and a half months is not on its own enough to defeat a finding that Plaintiff was replaced by a younger person, the Court concludes Plaintiff has made her prima facie case.

### b.     Non-Discriminatory Reason and Pretext

Because Plaintiff has stated a prima facie case of unlawful termination for purposes of Defendant's motion for summary judgment, the burden shifts to Defendant to show a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant points to Plaintiff's failure to report the June 23, 2015 Gilliam incident as such a reason. The burden therefore switches back to Plaintiff to show Defendant's reason was a pretext for discrimination.

Defendant alleges Regional Manager Firestine first learned about Plaintiff's failure to file a report when Gilliam called Nicholson, and Nicholson connected Gilliam with Firestine, on July 28, 2015. (Doc. 44 at 4.) Firestine and Human Resources Manager Emery then conducted a detailed investigation and decided termination was appropriate, even though they were initially unsure termination would be appropriate. (*Id.* at 15, 17.)

Defendant identifies six factors the two managers considered in concluding Plaintiff should be terminated: (1) Plaintiff knew about the reporting requirement, because she had reported similar

incidents in the past; (2) the event appeared serious when it occurred, in that Gilliam told Firestine on the phone he had felt pain in his chest and shoulder from lifting a heavy can; (3) even though Gilliam was not clocked in at the time, he was at his work place and he told Firestine he was doing work when it happened; (4) Gilliam told Firestine he had asked Plaintiff to fill out an incident report multiple times so he could get worker's compensation, but she had not filled out a report; (5) Plaintiff gave Firestine differing reasons for not making the report; and (6) Defendant had recently terminated another account manager for violating the reporting policy. (*Id.* at 15–16 (citing Doc. 43-2 [Firestine Dep.], Doc. 43-5 [Emery Dep.], Doc. 43-5 at 8–16 [Firestine and Emery emails re investigation]).)

Plaintiff has shown genuine issues of material fact as to the second, third, and fourth factors Defendant says went into the termination decision. Each of these factors rests on what Firestine says Gilliam told him about the incident after Gilliam called Nicholson about his bills. But Plaintiff has presented Gilliam's deposition testimony that he never told anyone he wanted worker's compensation and never talked with anyone about his bills, specifically including Nicholson and Firestine. (Doc. 48-3 at 4, 6–7 [Gilliam Dep. at 25, 27–28].) Gilliam further testified he never had a conversation with Nicholson about this incident at all. (*Id.* at 8 [Gilliam Dep. at 29].)

Defendant acknowledges there are genuine issues of fact about how it gained information about Gilliam's injury, but it argues they are not material because the information had a basis in fact, regardless of how Defendant acquired it. (Doc. 50 at 15–16.) The Court disagrees. The alleged conversation with Gilliam happened the same day Firestine decided to terminate Plaintiff. (Doc. 43-5 at 10–12.) Firestine claims he talked to Gilliam about the incident. Firestine attributes

the source of the facts for at least three of his reasons for wanting to terminate Plaintiff to his conversation with Gilliam. Gilliam testified he did not have that conversation with Firestine. The accuracy of Firestine's statements about how he acquired the information on which he based his decision is material to whether the stated reason for Plaintiff's termination is pretextual.

The contemporaneous emails between Firestine and Emery on which Defendant relies for support do little to dispel the possibility that Defendant's reason for terminating Plaintiff was pretextual. According to the emails: Firestine first learned of the failure to report "around 2:05 p.m." on June 28, 2015; Firestine emailed Emery about problems he had with Plaintiff's statement to him about the matter at 7:27 p.m. the same day; Emery responded at 7:35 p.m. in a hastily worded email that a final warning might be the best response; Firestine responded at 10:39 p.m. with a multi-paragraph analysis and a bullet-pointed list of why Plaintiff should be terminated; and Emery responded with a clearly-worded paragraph at 11:00 p.m. saying Firestine's argument was compelling, Emery's previous thinking had been "clouded," and Emery was by that time already waiting for legal confirmation Plaintiff could be terminated. (Doc. 43-5 at 9–16.) These emails do not paint a picture of two decision makers conducting a detailed investigation and reluctantly concluding they had to terminate an employee, as Defendant describes the events. Instead, they show Firestine convincing Emery to terminate Plaintiff by exchanging four emails over the course of three and a half hours during one evening. The entire time from Firestine's alleged discovery of the problem to Emery's requesting of legal confirmation for the termination, in fact, was no more than nine hours.

There are genuine issues of material fact as whether three of the six factors Defendant claims to have considered had a basis in fact. *See Lefevers*, 667 F.3d at 721. There is also a

genuine issue of material fact as to whether Defendant's stated reasons for terminating Plaintiff actually motivated her termination. *Id.* The Court will **DENY** Defendant's motion for summary judgment on Plaintiff's unlawful termination claims.

### D. Retaliation

The burden-shifting framework described above also applies to Defendant's motion for summary judgment on Plaintiff's retaliation claims. *See, e.g.*, *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 544 (6th Cir. 2008). For purposes of its motion for summary judgment, Defendant concedes Plaintiff has stated a prima facie case of retaliatory termination. (Doc 44. at 17.) It argues, however, that it has articulated a legitimate, non-discriminatory reason for Plaintiff's termination. Defendant relies largely on the arguments it made in the context of Plaintiff's unlawful termination claim. Plaintiff responds that there are genuine issues of material fact as to whether Defendant's stated reason for the termination is a pretext for retaliation.

The Court finds against Defendant on this issue for the same reasons articulated as to Plaintiff's unlawful termination claim.[11] The Court will **DENY** Defendant's motion for summary judgment on Plaintiff's retaliation claims.

### E. Negligent Hiring, Retention, and Supervision

A claim of negligent hiring, retention, and supervision under Tennessee law is subject to the one-year statute of limitations for personal injury actions in Tennessee Code Annotated § 28-3-104(a)(1)(A). *Redwing v. Catholic Bishop for the Diocese of Memphis*, 363 S.W.3d 436,

---

[11] Defendant argues the process Firestine and Emery followed "[s]urely . . . does not demonstrate the actions of decision-makers who are waiting for the opportunity to retaliate against an employee for taking part in protected activity." (Doc. 44 at 17.) Contrary to Defendant's assertion, if a supervisor were waiting for an excuse to terminate an employee, it is conceivable the evidence could look rather like this.

463–64 (Tenn. 2012). Defendant argues Plaintiff's claim for negligent hiring, retention, and supervision is barred because her claim accrued no later than July 31, 2015, the date on which Defendant terminated her employment, and she did not file her action until almost a year and a half later, on December 16, 2016. *See Howell v. Fed. Express Corp.*, No. 03-2098 ML/V, 2004 WL 2384846, at *3–4 (W.D. Tenn. Sep. 30, 2004) (negligent hiring and retention claim accrued on date of plaintiff's termination).

Plaintiff agrees her claim is governed by the one-year statute of limitations and that an employee's action for negligent hiring, retention, and supervision generally accrues on the employee's last date of employment. (Doc. 49 at 19.) Plaintiff argues the statute of limitations in this case was tolled, however. Plaintiff did not discover until Firestine's November 29, 2017 deposition that Firestine knew about the March 30, 2015 email to which her letter to the Tennessee Human Rights Commission was attached, and that despite this knowledge, Firestine did nothing to protect her from harassment by Nicholson. (*Id.*) Plaintiff cites no authority for this argument. She does not explain on what legal basis her tolling argument rests or how the facts she has alleged warrant tolling. The Court will **GRANT** Defendant's motion for summary judgment on Plaintiff's negligent hiring, retention, and supervision claim based on the statute of limitations. Plaintiff's claim for negligent hiring, retention, and supervision will be **DISMISSED**.

IV.     <u>**CONCLUSION**</u>

The Court will **GRANT IN PART and DENY IN PART** Defendant's motion for summary judgment (Doc. 43). The Court will **GRANT** Defendant's motion as to Plaintiff's hostile work environment claims under the ADEA and THRA and her claim for negligent hiring,

retention, and supervision. These claims will be **DISMISSED**. The Court will **DENY** Defendant's motion as to her discriminatory termination and retaliation claims under the ADEA and THRA. Defendant's motion to strike (Doc. 51) and Plaintiff's motion to strike (Doc. 48 at 4–5) will be **DENIED**. Plaintiff's motion to file her response one day late (Doc. 52) will be **GRANTED**.

An appropriate order will enter.

_/s/_____
**CURTIS L. COLLIER**
**UNITED STATES DISTRICT JUDGE**